1   Richard A. Smith, WSBA #21788
    Knoll Lowney, WSBA #23457
2   SMITH & LOWNEY, PLLC
    2317 E. John St.
3   Seattle, WA 98112
    (206) 860-2883
4   Local Counsel for Plaintiffs

5

6                 UNITED STATES DISTRICT COURT

7             WESTERN DISTRICT OF WASHINGTON
                         AT SEATTLE
8

| | |
|---|---|
| JEFF MILLS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | |
| | CASE No.: |
| Plaintiff, | |
| | COMPLAINT |
| vs. | |
| | CLASS ACTION |
| L & L ENERGY, INC., DICKSON V. LEE, JUNG MEI (ROSEMARY) WANG, AND IAN G. ROBINSON, | |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

       Plaintiff Jeff Mills ("Plaintiff"), individually and on behalf of all other

persons similarly situated, by his undersigned attorneys, for his complaint against

Defendants, alleges the following based upon personal knowledge as to himself and

his own acts, and information and belief as to all other matters, based upon, *inter*

*alia*, the investigation conducted by and through his attorneys, which included,

among other things, a review of the defendants' public documents, conference calls

and announcements made by defendants, United States Securities and Exchange

1

Commission ("SEC") filings, wire and press releases published by and regarding L & L Energy, Inc.. ("L&L," or the "Company"), securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of L&L between August 13, 2009 and August 2, 2011, inclusive, (the "Class Period") seeking to recover damages caused by Defendants' violations of federal securities laws.

2.      During the Class Period, Defendants issued materially false and misleading statements and omitted to state material facts that rendered their affirmative statements misleading as they related to the Company's financial performance, business prospects, and true financial condition.

## JURISDICTION AND VENUE

3.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder (17 C.F.R.  §240.10b-5).

4.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

5.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).

6.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

7.      Plaintiff Jeff Mills, as set forth in the accompanying certification, incorporated by reference herein, purchased L&L securities at artificially inflated prices during the Class Period and has been damaged thereby.

8.     Defendant L & L is a Nevada Corporation, with its principal executive offices in Seattle, Washington.  L&L purports, through its subsidiaries, to engage in coal mining, clean coal washing, coal coking, and coal wholesaling businesses in the People's Republic of China. The company's coal products include washed coal and metallurgical coke used primarily for steel manufacturing.

9.     In August 2008, the Company's common stock began to trade on the NASDAQ Bulletin Board under ticker "LLFH." In December 2009, L & L Energy,

Class Action Complaint for Violation of the Federal Securities Laws

Inc., a Nevada Corporation, merged into L & L International Holdings, Inc. and L &L International Holdings, Inc., the surviving entity after the merger, changed its name to "L & L Energy, Inc."

10.    On February 18, 2010, the Company's stock began trading on the NASDAQ Global Market under ticker "LLEN.

11.    Defendant Dickson V. Lee ("Lee") was the Founder of the Company and, as of August 25, 2008, at all relevant times herein, the Chief Executive Officer of the Company. As of January 25, 2009 and at all relevant times after that point he was also the Chairman of the Company.

12.    Defendant Jung Mei (Rosemary) Wang ("Wang") joined the Company as Chief Financial Officer on June 22, 2009, and was, the Company's CFO between that point and her resignation on January 18, 2011, CFO of the Company.

13.    Defendant Ian G. Robinson ("Robinson") at all relevant times a Company Director.   Effective June 30, 2011, Robinson was appointed the Company's Chief Financial Officer and Chief Accounting Officer.

14.    Lee, Wang, Lin and Robinson, are herein referred to collectively, as the "Individual Defendants."

15.    During the Class Period, each of the Individual Defendants, as senior executive officers, agents, and/or directors of L&L and its subsidiaries and affiliates, was privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, via access to

4

internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof, and via reports and other information provided to them in connection therewith.   Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

16.    The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder, and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature.  Because of their Board membership and/or executive and managerial positions with L&L, each of the Individual Defendants had access to the adverse undisclosed information about L&L's financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about L&L and its business issued or adopted by the Company materially false and misleading.

1

2

3

## SUBSTANTIVE ALLEGATIONS

17.     The Class Period begins on August 13, 2009 when L&L filed with the

SEC a materially false and misleading annual report for the fiscal year ended April

30, 2009.  The 10-K was signed by defendants Lee, Wang, and Robinson.  Lee and

Wang separately executed certifications pursuant to the Sarbanes-Oxley Act of

2002 ("SOX"), attesting to the accuracy of the 10-K.

18.     In the 10-K the Company reported net revenue of $40.9 million and

net income of $9.9 million.

19.     On September 14, 2009, L&L filed with the SEC a materially false and

misleading 10-Q for the first quarter ended July 31, 2009.  The 10-Q, signed by Lee

and separately certified by Lee and Wang under SOX, reported for the Q1 net

revenue of $12.7 million and net income of $2.7 million.

20.     On December 6, 2009, L&L filed with the SEC a materially false and

misleading 10-Q for the second quarter ended October 31, 2009.  The 10-Q, signed

by Lee and separately certified by Lee and Wang under SOX, reported Q2 net

revenue of $24.4 million and net income $8.8 million.

21.     On March 17, 2010, L&L filed with the SEC a materially false and

misleading 10-Q for third quarter ended January 31, 2010.  The 10-Q, signed by

Lee and separately certified by Lee and Wang under SOX, reported Q3 net revenue

$37.9 million and net income $11.0 million.

22.    On July 28, 2010, L & L filed a materially false and misleading Annual Report on Form 10-K for the fiscal year ended April 30, 2010. The 10-K, signed by Lee, Wang and Robinson, and separately certified by Lee and Wang under SOX, reported for the year $109 million in net revenue and net income of $32.9 million.

23.    The 2010 10-K falsely listed only a single internal control deficiency relating to documentation of operations due to four material acquisitions during the 12 month period.

### THE TRUTH BEGINS TO EMERGE AND MATERIALIZE

24.    On July 29, 2011, an amendment to the Company's 2010 10-K was filed with the SEC, that provided additional internal control deficiencies for 2010. The amendment states:

> A material weakness is a control deficiency, or combination of deficiencies, in internal control over financial reporting, such that there is a reasonable possibility that a material misstatement of the Company's annual or interim financial statements will not be prevented or detected on a timely basis. We have identified the following material weakness that has not been identified as a material weakness in Management's Report, included with the Company's Form 10-K filed on July 28, 2010. The Company did not maintain effective controls over its process to ensure the timely completeness and accuracy of the preparation and review of its consolidated financial statements. This resulted in several adjustments to the Company's consolidated financial statements, principally including timely transfer of completed construction projects to property, plant and equipment, as well as reclassification of negative balances in accounts payable and accounts receivable. It was also determined that the Company's entity level controls were not adequately designed and

7

that weaknesses were noted in the financial reporting process. These material weaknesses were considered in determining the nature, timing, and extent of audit tests applied in our audit of the 2010 financial statements, and this report does not affect our report dated July 28, 2010 on those financial statements.

In our opinion, because of the effect of the material weakness described above on the achievement of the objectives of the control criteria, L&L Energy, Inc. and its subsidiaries have not maintained effective internal control over financial reporting as of April 30, 2010, based on the criteria established in Internal Control—Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO).

25.     This adverse news caused the Company's stock to fall from $.79/share, or 15.9% on August 1, 2011.

26.     On August 2, 2011, Glaucus Research Group, an independent financial research firm, published a report alleging that the revenues and net incomes claimed by the Company's SEC filings for the calendar year ended 2009 are inaccurate because financial statements filed the PRC authorities show that the Company's sales to be $65 million less, and net profits to be $19 million less, when compared to the Company's SEC filings.  The report concludes that L&L's assets are only 25% of the value of that L&L's claims in its SEC filings, and that L&L's net sales are four times smaller than what L&L claims in its SEC filings.

27.     The Glaucus report also raised additional red flags of fraud indicating that the Company's periodic reports filed with the SEC during the class period are not accurate.

28.     The report calls into question L&L's the ownership of certain subsidiaries and assets. The report raises questions about the validity of the Company's supposed ownership of the Luoping County Zone Lin Coal Coking Factory ("Zone Lin") and the Hong Xing Coal Washing Facility ("Hong Xing"). Specifically, the report points to Chinese regulatory filings signed April 15, 2010, which states that Hong Xing remained a sole proprietorship that was wholly owned by Hong Xing Li, the same individual who was supposed to have sold the factory to L&L.

29.     Additionally, the report cites Chinese regulatory filings from June 2, 2010 showing that Zone Lin is a sole proprietorship and that Lao Yang is the registered owner of all of the outstanding equity interests of the firm.

30.     The report also points to the weaknesses of the Company's auditors. For example, Jaspers and Hall, PC ("Jaspers") was the Company's auditor from February 28, 2006 to October 29, 2008. The end of its tenure with the Company came approximately one week after its registration was revoked by the Public Company Accounting Oversight Board (PCAOB) and its only two partners barred by the same organization from being associated with a registered public accounting firm for five years.

31.     The Report also raises evidence questioning the history of Kabani & Company ("Kabani"), the accounting firm that took over as L&L's  auditor on November 9, 2008, immediately after Jaspers departed from the Company. The

Report cites the PCAOB's 2010 inspection of Kabani, which found, in over 60% of the audits performed by the firm:

> [D]eficiencies of such significance that it appeared to the inspection team that the Firm did not obtain sufficient competent evidential matter to support its opinion on the issuer's financial statements.

32.     As a result of the adverse informaiton, L&L's stock fell over $.84/share or 17.3% from August 2, 2011 through August 4, 2011.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of L&L during the Class Period and who were damaged thereby.   Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

34.     The members of the Class are so numerous that joinder of all members is impracticable.   Throughout the Class Period, L&L's securities were actively traded on the NASDAQ.   While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by L&L or its

transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

35.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

36.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

37.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)  whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)  whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of L & L Energy, Inc.; and

(c)  to what extent the members of the Class have sustained damages and the proper measure of damages.

38.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members

may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### Applicability of Presumption of Reliance:

### <u>Fraud-on-the-Market Doctrine</u>

39.   At all relevant times, the market for L&L's  common stock was an efficient market for the following reasons, among others:

(a)   L&L's met the requirements for listing on the OTC Bulletin Board and as of February 18, 2010 the NASDAQ, and is currently listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)   During the class period, on average, several hundreds of thousands of shares of  L&L stock were traded on a weekly basis, demonstrating a very active and broad market for L&L and permitting a *very strong* presumption of an efficient market;

(c)   As a regulated issuer, L&L filed periodic public reports with the SEC;

(d)   L&L regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)   L&L was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force

and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace;

(f)     Numerous NASD member firms were active market-makers in L&L stock at all times during the Class Period; and

(g)     Unexpected material news about L&L was rapidly reflected and incorporated into the Company's stock price during the Class Period.

40.     As a result of the foregoing, the market for L&L's common stock promptly digested current information regarding L&L from all publicly available sources and reflected such information in L&L's stock price.   Under these circumstances, all purchasers of L&L's common stock during the Class Period suffered similar injury through their purchase of L&L's common stock at artificially inflated prices, and a presumption of reliance applies.

## FIRST CLAIM

### Violation of Section 10(b) Of

### The Exchange Act Against and Rule 10b-5

### Promulgated Thereunder Against All Defendants

41.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42.     This claim is brought against L&L and all of the Individual Defendants.

43.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (2) cause plaintiff and other members of the Class to purchase L&L's common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

44.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for L&L's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of L&L as specified herein.

46.     These Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of L&L's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about L&L and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of L&L's common stock during the Class Period.

47.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's financial condition; (3) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information

about the Company's finances, operations, and sales at all relevant times; and (4) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

48.    Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing L&L's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock. As demonstrated by Defendants' overstatements and misstatements of the Company's financial condition throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of L&L's common stock was artificially inflated during the Class Period.  In ignorance of the fact that market prices of L&L's publicly-traded common stock

were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired L&L common stock during the Class Period at artificially high prices and were or will be damaged thereby.

50.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding L&L's financial results, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their L&L common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices that they paid.

51.    By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

52.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

53.   This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## **SECOND CLAIM**

### **Violation of Section 20(a) Of**

### **The Exchange Act Against the Individual Defendants**

54.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.   The Individual Defendants acted as controlling persons of L&L within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, agency, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and

had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

56.     In particular, each Defendant had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57.     As set forth above, L&L and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.

58.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

59.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating Plaintiff as class representative under Rule 23 of the Federal Rules of Civil

Procedure and Plaintiff's counsel as Class Counsel;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Class Action Complaint for Violation of the Federal Securities Laws

Respectfully submitted,


SMITH & LOWNEY, PLLC

By: *s/Richard A. Smith*
Richard A. Smith, WSBA #21788
Knoll Lowney, WSBA #23457
2317 E. John St., Seattle, WA 98112
T: (206) 860-2883, F: (206) 860-4187
rasmithwa@igc.org, knoll@igc.org

Local Counsel for Plaintiff

THE ROSEN LAW FIRM, P.A.
Laurence M. Rosen, Esq.
Phillip Kim, Esq.
THE ROSEN LAW FIRM, P.A.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

Counsel for Plaintiff

Class Action Complaint for Violation of the Federal Securities Laws